Our final case for argument today is 2018-1599, Personal Web Technologies v. Apple. Mr. Hadley, please proceed. Thank you, Your Honor.  In the prior decision in this case, this Court remanded this case back to the Board and specifically directed it to do two things. First, as to whether the prior art reference, Woodhill, compares a content-based identifier against a plurality, the arguments had centered on the restore procedure in Woodhill, and specifically Column 17. And this Court said, go back, analyze Column 17, and provide an evidence-based explanation as to how Woodhill shows this comparison. Secondly, this Court said, in terms of motivation and reasonable expectation of success, said to provide a clear evidence-supported account of the contemplated Woodhill-Stefik combination, how it would work, and why that combination would support a conclusion that a skilled artisan would have had an apparent reason to make the combination and reasonably expected it to work. If we agree with you that Woodhill does not inherently disclose how backup files relevant, receive, update, request, that whole thing, if we agree with you that Woodhill doesn't inherently disclose that, we don't have to reach the other points on motivation to combine, correct? Because the Office relied on Woodhill's disclosure to provide the element.  All right. So turning to that specific point, we know now that we were correct when we said that Woodhill does not disclose a comparison of a content-based identifier against a plurality of values. In fact, in the remand decision, the Board expressly said, and Apple admits, that Woodhill, quote, doesn't mention a comparison. Instead, as Your Honor mentioned, the Board relied on an inherency theory in the remand decision. But the Board misapplied the law of inherency, both misapplied the law and the facts in reaching the inherency decision. First, in terms of inherency, the law of this Court is clear. We definitely know the law. So just get to your precise factual point. Is it your point that it's not clear, Woodhill doesn't explain how it locates the backup files relevant to a received update request? And it's possible, you have to admit, it's possible these backup files could be located by comparing the binary object identifier and the update request to a plurality of binary object identifiers in the backup server. It's possible, but it's not necessary to do so because the update request also includes a link to the file identification record, which contains file location. So while it's possible they do this, it's not required by any means because there's this alternative way the very thing could be done based on the exact disclosure in Woodhill. Do I have your argument? You have my argument, Your Honor. All right. And we know that it's possible because that is the invention of the 310 patent, the True Names patent. There was no invention of this prior to the True Names patent. And if this was something that could be inherent, you would think Woodhill, having invented this brand new thing, would at least say something about it. It didn't. Can you remind me again what is the board's view of why this particular limitation is met? Is its view that it's zeroing in on the disclosed, the discussed binary object identification record in column 17 and then you extract the binary object identifier from that record and then you use that binary object identifier to look through some database of binary object identifiers to find a one-to-one correspondence? Your Honor, I can't answer that question because the board never explained it. Well, I need you to try in order to figure out whether or not it is a reasonable reading of the reference. It's not a reasonable reading of the reference. But is that your understanding of the board's understanding of column 17? The board only in addressing column 17. Or is it using the binary object identifier extracted from the binary object identification record in order to locate a file as opposed to a specific binary object? Well, we know it can't be the latter because a binary object identifier can only identify a binary object. There is no disclosure. I might not disagree with you, but I'm just trying to understand what the board's understanding. There's no disclosure in Woodhill of a file identifier, a content-based identifier for a file. So we know that that isn't part of Woodhill. The only evidence that the board cited was paragraph 72 of the Goldberg Declaration. That was Apple's expert. And what the board pointed to and what Dr. Goldberg said was only this, and I quote, quote, the remote backup file server maintains some sort of file system or other mapping, i.e. database, that allows the binary object identification record to serve as a lookup for the requisite file data. There is nothing in Dr. Goldberg's declaration about how that system, or how that description of taking a binary object identification record and somehow using that in a database or file server, either A, expressly requires the comparison of a binary object identifier against the plurality of values to find a file, or B, why that's inherent. In fact, Dr. Goldberg never provided any testimony whatsoever regarding the issue of inherency. The issue of inherency never came up in this case, either in the decision to institute, in the final written decision. It didn't come up until the board's remand decision. And before the remand, the board never said, look, we think we're going to go on an inherency theory, so we want you to brief inherency. That was something that the board came up with for the very first time in the decision on remand. I guess the board is trying to use some logical thought process in trying to understand exactly how do you access all these granules and you first get to the granules by first getting to the binary objects. And how do you get to those binary objects? Well, you must be using the binary object identifiers. And that's what is contained, or that's what the binary object identification record contains. And so now you can go hunt down the corresponding binary object. You know, the Apple's argument and the board's decision make express that they think this inherent disclosure happens, or this inherent process of comparing against the plurality happens at the very beginning of the restore process, where Woodhill at step 442, and this is shown in the appendix at, let's see, figure 5i of Woodhill. Step 442 simply says, obtain identity of the file. And that's where they say this comparison of a binary object identifier against the plurality has to occur. Well, there's two problems with that. First, we know that binary objects are simply small pieces of a file, one megabyte pieces. And there could be many, many binary objects within a given file. There's no explanation of how you could take one little piece of a file and a content-based identifier for that piece of a file and use that to identify the entire file. There's just no explanation anywhere, and I can't think of a way that you could do that. But even more important, if you go back to figure 5i of Woodhill and you look at the next step after 442, step 443 says compile a list of binary objects in the previous version of the file. So if you haven't even compiled the list of binary objects until after you've obtained the identity of the file and you've located the file, how could it be that comparing a binary object identifier to a set of binary objects that haven't even been located yet or compiled could somehow let you find the file? It's completely illogical. It turns the flowchart of figure 5i of Woodhill on its head. There's simply no explanation of how that would happen, and therefore, under the law, it can't possibly be inherent in Woodhill. In fact, Woodhill really teaches away from using the binary object identifiers. And one more point is that Woodhill earlier actually talks about how you find a file, regardless of what you want to do with it. There's a section of Woodhill that talks about compressing files, and it says the first thing you have to do is find the file before you compress it. And at column 11, line 57 through 12, line 5, and that's at appendix 1679, it talks about using the file name and the file location to find the file and then to look at the binary object offsets to find where each binary object is and then compress it. Remember, in Woodhill, the reason you have this binary object offset is that the binary objects are a fixed size, except for perhaps the last one for whatever is left over. But they're exactly one megabyte long, starting at byte zero. So if you know where the file is, by the file name, the location, everything conventional, you can find where each binary object is in that file by simple counting, starting with zero and going in one megabyte segments. There's absolutely no reason why you would need to use a content-based identifier to find any binary object within a file in Woodhill. It's like an address inside of the file? Essentially, the binary object identifier doesn't serve as an address because all the binary objects... No, no, but I'm talking about the reliance on the offset. Correct. The lines on the offset effectively act like an address. So if you say find binary object 3, you go in three megabytes, and from megabyte 3 to megabyte 4, that's exactly where that binary object is. And so again, at column 11, when you're talking about compressing a file, Woodhill expressly says, here's how you find a file, and it has nothing to do with comparing binary objects with anything. In fact, Woodhill uses, of course, the binary objects in one-to-one comparisons. I think this was all agreed during the last hearing before this board, and even by the board, to save bandwidth, to determine what has changed. So you're looking at binary objects individually, and comparing one-to-one with the binary objects for the corresponding version on the user's computer. And whether you're backing up or you're restoring, the whole idea is to make that one-to-one comparison and only use the bandwidth if there's been a change. There's simply no disclosure whatsoever in Woodhill of using a binary object identifier for this broader process that frankly wasn't invented until the TrueNames patent, in the 3.10 patent and its predecessors, of using a content-based identifier for this broader purpose of determining whether a particular piece of data, whether it's defined by a fixed size or not, to locate that anywhere in a network or a system. And that's, again, another reason why it can't possibly be inherent in Woodhill to use this content-based identifier to find the file in the first place, and certainly not before you've even compiled your list of binary object identifiers as shown in the next step in Figure 5i of Woodhill. You're into your rebuttal time. Would you like to save some? Not unless there is any questions regarding the motivation to combine. Thank you. May it please the Court. The key distinction here between what Mr. Hadley is talking about and what we're talking about with the restore procedure is that what Mr. Hadley is talking about with respect to, say, the compress routine, for instance, that's all taking place on the local workstation, whereas what we're talking about here in terms of the restore procedure is taking place on the backup file server. It's clear for the very first time... So just to match up with the claim language, what's the data item in column 17 of Woodhill that is being compared to a plurality of values? It's the binary object. So I think column 17... Correct. The content-dependent identifier, content-dependent name of the claims in the 310 patent is... Okay. And then what are the plurality of values in column 17 that the binary object identifier is being compared against? Sure. It's a plurality, sort of a database on the backup file server of all the binary objects, and it's very clear in column 17. Of all the binary object identifiers? Correct. In a specific file? No, just the binary object identifiers on the backup file server altogether. So there could be, like, 10 million binary object identifiers among, I don't know, a million or 500,000 files? There could be, and there's no indication anywhere in Woodhill that there's any sort of segregation by... It's very interesting. There's a database of binary object identifiers necessarily part of Woodhill that contains the binary object identifier for every binary object in every single file stored on the backup server. Correct. And that's the only evidence that there is before the board. The evidence that... Why would a system be created like that? I guess I don't understand. I mean, the backup server is going to have file names, right? So you can locate every single file. There is no indication whatsoever in Woodhill that the file names or locations are on the backup file server. Mr. Hadley, or Personal Web, for the very first time in this appeal, points to the binary object identification record that gets sent over as part of the request. Now Personal Web, for the very first time, points to this link to the backup instance record, and from there they point to, in the backup instance record, there's a link to the file, which has file name 40 and location 38. This is the very first time that that argument has been made. Back before the board, in the original filings that Personal Web made, it had argued sort of a different theory of how the file was located. But this pointing to the backup instance record, you don't see that in the patent owner's response. Dr. Dewar's declaration, Dr. Dewar was Personal Web's expert. You didn't see it in the motion for rehearing, and you didn't see it in their brief on remand. So they take issue with the board sort of not going through various alternatives and shooting them down. Well, this alternative was not before the board. I guess I'm just trying to understand why would there be such a database. No such database is mentioned in the Woodhill patent. It talks about a file database. It talks about a backup queue database. And now you're talking about this very interesting other database. Even if the database on the backup file server did segregate things by files, it still would perform this comparison, because every file, unless it's just one meg, every file is going to have more than one binary object. So Woodhill is very clear in column 17 that the request that goes over, the update request that goes to the backup file server, contains the binary object identification record for each of the binary objects of the previous version of the file that needs to be restored. So even if there is some segregation by user or file on the backup file server, you still have to locate the binary object to see whether or not the binary object is actually on the backup file server. So it's necessarily the case that there would be a comparison between the binary object identifier and multiple, plurality, more than one binary object identifier. So you're saying for a given file, maybe it's a 40 megabyte file, so therefore there's 40 binary objects in there. Correct. And then you have a binary object identification record. You extract the binary object identifier, and then you do what? You somehow compare that identifier against the 40 binary object identifiers in the previous version of the file? That is correct. To see whether or not that binary object identifier exists on the backup file server and where it's located so that the next step in the procedure, the granule restore procedure can commence. But why does it need to be done that way, I guess, is what I'm trying to figure out. There's the offset field that kind of gives you an understanding of the location of all the given binary objects inside of a file. Well, I think going back to the substantial evidence standard, this is the board considered the evidence. The board looked at Woodhill. But it's a substantial evidence of necessity, and I thought Mr. Hadley described a scenario in which both on the backup server and the local you know that the thing you're looking for is in place number 17 in the file. And as long as you know that on the backup server you've got, in Judge Chen's example, the 40 separate binary objects, you're looking at number 17, and all you need to do is compare this number 17 to this number 17. One-to-one comparison, not a plurality. As long as that's possible, then there's no inerrancy. I gather something like that is his theory. Correct, but there is nothing. There's no evidence whatsoever that on the backup file server, in order to do that you would need sort of file name, location, things of that sort to kind of find where you're even going to start to do this lookup of the binary object identifier. And they haven't pointed to anything on the backup file server that shows that there's file name and file location. In fact, the binary object identification record 58 that gets sent as part of this update request does not contain the file name and the file location. On line 30 of column 17 it says the manager program 24 obtains from the user the identities of the current and previous versions of the file, which needs to be restored. So it sounds like there's no need to go hunting around for the identities of the files. The user is providing that to the program. But the identities referenced there cannot be a conventional file name, as Mr. Hadley suggests, because the current version of the file and the previous versions of the file are all going to have the same conventional file name. So say you have five versions of, say, a Word document, a legal brief. If you have five versions and you have on the user's computer version 5 and you have maybe version 4 also, the previous version, because Whittle says you have the current version and one previous version, everything else is stored on the backup file server. So say you want to go and you want to restore the current version to previous version 2 that's on the backup file server. You can't use the conventional name, because if you send back the conventional name to the backup file server, that's going to give you versions 1, 2, and 3. You're not going to know what version you need to go to. And again, there's nothing indicating that the update request includes a file name or a location. That's not what's sent. What's sent over is the binary object identification record. Within the binary object identification record, there is no file name. There is no file location. That is linked. You can sort of reach that through various links, but even there, as column 3 makes clear, the file name and location are the file name and location on the user's workstation. There's nothing indicating that any of that information is on the backup file server. I think column 3, towards the bottom, is very clear on that. Are you saying that you're using the binary object identifier not only to find the prior version of the binary object, but also the file itself? You need the binary object identifier to locate the binary object on the backup file server. Right, but then is that the way you get access to the file on the backup server? Well, I don't think there's anything where you ever get access to a file. I'm trying to figure out chicken or egg first. Do you find the file first on the backup server, or do you find a specific binary object of a particular file on the backup server, and then you kind of work your way to getting access to the backup file? I think it could work either way, and I think under either instance, there would still be a comparison to a plurality of values. But again, there's nothing that the user's workstation is sending to the user's workstation that would in any way include file location, file name, anything of that sort. I think column 3 of Woodhill is very clear that the file name 40 and the file location 38 are all about what's on the user's workstation. And again, for the reasons I mentioned earlier, you can't just send a file name, because if you're looking for, say, version 1, version 2, version 3, and so on, are all going to have the same file name. So using file name doesn't really get you anywhere. They're all going to have the same name? I mean, when I save different versions of a file, like name 1, name 2, name 3, or something like that, to differentiate between the different versions of a given document that I'm working on. Well, again, if we look to column 3 of Woodhill, column 3, when it's talking about the file name, file location 38 and file name 40 that's all part of the file identification record, we see, starting on line 64 of column 3 of Woodhill, it says, for each file identification record, 34, and file database 25, one or more backup instance records, 42, are created that contain the information about the file. So it's clear that file location 38 and file name 40 are all about the current version of the file that's on the user's workstation. You can create numerous backups. You're going to have, say, whatever, five backup instance records, 50 backup instance records, however many versions you have. You're going to have different backup instance records, but you're only going to have one file identification record, and within that, one file name and one file location, and that's all referring to the current version of the file, not the previous versions. Again, looking at the evidence that was before the board, I mean, the board did consider Woodhill. They considered the testimony of Dr. Goldberg. The theories that Personal Web is putting forth now were not something that was presented to the board in Dr. Dew's declaration. Yes, but the problem with that is you can waive waiver, and I just sat here and paged through your red brief, and the word waiver doesn't appear in it. So you didn't make your argument in the red brief that they have waived this argument that they presented to us about the link, namely in figure 3, that you see. So you're standing up here today and making it, but that doesn't help you. So I'm not making an explicit waiver argument. What I'm saying is they're trying to fault the board for not considering it, for not going through sort of every— Well, they're faulting the board for not considering what's in the disclosure of Woodhill, which includes figure 3, and you're saying, well, they didn't make that argument to the board below, and I'm saying, well, they made it in their blue brief, and they made it in their gray brief, and you disputed it in your red, but what you didn't argue is you didn't make that argument to the board below. So that means you waived the ability to complain that they didn't make this argument to the board below because you had notice of it in blue, and you made the waiver argument for the first time orally. What I'm saying is—I'm not making a waiver argument. What I'm saying is in addressing whether— But you used the word waiver earlier. So I don't—maybe you're not making a waiver argument now, but you definitely did earlier in the oral argument. Okay, perhaps I misspoke. What I was intending to say was that when considering— what Personal Web argues is that the board didn't go through the proper analysis, that it didn't say these magic words of this possibility doesn't work, and that possibility doesn't work, and that possibility doesn't work. And I haven't seen any authority that requires the board to go through every single potential possibility and explain why it wouldn't work. What it did say, it made the necessary factual— Well, I understood them to say the file identification record could be the way in which these things are located. I understood you in the red brief to say file identification record, that's not even, you know, submitted or sent. And then they came back in the gray brief and said, actually, it's attached right here. It's demonstrated in the patent it's attached. So that's the nature of the argument as I understood it. I could be wrong. So it's not that it's actually attached, but it is a link in the—linked in the database. But you said it wasn't present, and they said, sure it is. It's the link. It's the link is sent, which contains the very information. The link is not—so the link does not, in a database structure, a link being sent doesn't contain the information. And in any event, the binary object identification record contains the link to the backup instance record. That does not contain the file name and the file location. Within the backup instance record on the user's workstation, there's actually a link to the file identification record, which there contains file name 40 and file location 38. That information never goes to the user works—I'm sorry, to the backup file server. So that's not something that the backup file server ever gets. So I think in our brief, that is what we were arguing. Perhaps it wasn't entirely clear. But the file identification record is not something that the backup file server ever has access to, and there's no indication it does—it's purely a link to the backup instance record, which then contains a link. But in any event, the file name and the file location that are in the file instance record are on— are information about the file, the current version of the file, on the user's workstation. That is not information about one of the backup previous versions on the backup file server. On the motivation to combine, Stefik is talking about accessing or approving the access of a file, and here in Woodhill we're talking about, I guess, the approval of access to a binary object or a binary object identifier. Sure. And to me that seems like a peculiar way to, you know, whitelist or blacklist access to something on a backup server. I would think you would be, as in Stefik, trying to approve or disapprove access to a given file, not to a given little data item inside of the file. You could have a list—I mean, all we're talking about in terms of the combination is basically taking the existing system of Woodhill, and I think there are a few places in the board's decision on remand where they basically say, you know, Woodhill gets you just about all the way there, but you just need to add a sort of small authorization layer of Stefik. And all you would need to do is add a field, say, in the database that's on the backup file server that checks, you know, does user A have, you know, access to these various binary objects. It would be a pretty simple thing to implement in a database structure. To approve the access to a given object inside of a file as opposed to approval to access to the file as a whole. Correct. Because you could have it—the binary object is just, you know, as we've spoken about, just splitting up the file into various pieces. So you could have a field in the database that, you know, say you had brought up an instance where, say, it's a 40 meg file, so you have 40 binary objects. And you could have in the database on the backup file server a field that says, okay, for these, you know, 40 different binary objects, yes, user A has access, or maybe, you know, whatever user A has access to is not listed there. So therefore, user A does not have access and then is not authorized to access that file. So it would just be a simple modification of the existing system. And you certainly do it on a binary object basis because you could have all the binary objects for a particular file when they're backed up. You could give permissions or not permissions, or those things can change over time. Okay. Let's have Mr. Hadley, and let's hear from him on his rebuttal. Okay. Mr. Jay went over, so you have two minutes. And if you need a little bit of extra time, we'll be generous and certainly give it to you. I want to go back to Woodhill Column 17. It expressly says at lines 28 to 32, the Distributed Storage Manager Program obtains from the user the identities of the current and previous versions of the file, not the binary objects of the file, which needs to be restored. We go to figure 5i at step 442, obtain identity of the file. And then we go to figure 3, and there is expressly disclosed something called a file identification record. The problem where the board and Apple fail to satisfy the law of inherency is that nothing in their experts' declaration, there is absolutely no evidence whatsoever and no explanation in the board's decision about how you would find a file using simply a binary object identifier for one little piece of the file, particularly when the patent says obtain from the user the final file and you have something called a file identification record that has the file name and the file location. I mean, there is no suggestion anywhere that you can't find files conventionally. That's the way you found files since computers... I'm hearing the other side saying you use it to find a binary object, to restore a given binary object in a file, not to locate the entire file. The argument that the board made, or what the board found, was that you use the binary object identification record to find, and the binary object identifiers, the content-based identifiers, to find the file by comparing the binary object identifier against a plurality. There is nothing in the record whatsoever and nothing in the declaration to support the idea that that's how you find a file. And everything in Woodhill says just the opposite, that you have all the information that you need to find a file conventionally. And if that's the case, then you can't possibly have an inherent disclosure of something that the board in Apple admit Woodhill doesn't mention, and that's a comparison of a content-based identifier against a plurality. And for that reason, we've been through this once, and we would respectfully ask that this not be remanded again back to the board. We've already been through nearly four years of IPR proceedings on this particular patent, but we would instead respectfully ask that the court render the matter as being valid and find that Apple did not sustain its burden of proof. Okay, I thank both counsel for their argument. The case is taken under submission.